UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
PETER FRANCIS and MICHAEL GEORGE,

                Plaintiffs,

       -against-

IDEAL MASONRY, INC., ROCKY'S
CONSTRUCTION, INC., and RAKID
("ROCKY") VRLAKU,

                Defendants.
-------------------------------------------------------------- x

**REPORT AND RECOMMENDATION**

16-CV-2839 (NGG)(PK)

**Peggy Kuo, United States Magistrate Judge:**

       Peter Francis and Michael George (collectively, "Plaintiffs") brought this action against Ideal Masonry, Inc. ("Ideal"), Rocky's Construction, Inc. ("Rocky's"), and Rakid Vrlaku[1] (collectively, "Defendants"), alleging violations of 42 U.S.C. § 1981 ("Section 1981"), Title VII of the Civil Rights Act of 1964 ("Title VII"), and the Administrative Code of the City of New York, § 8-101 *et seq.* ("NYCHRL").  Before this Court on referral from the Honorable Nicholas G. Garaufis is Defendants' Motion to Vacate an Entry of Default (the "Motion").  (*See* Dkt. 27.)  For the reasons stated herein, the undersigned respectfully recommends that the Motion be granted, but that vacatur be contingent on Defendants first paying Plaintiffs' costs and attorneys' fees expended as a result of the default.

**BACKGROUND**

       Plaintiffs filed the Complaint on June 3, 2016, alleging that Defendants discriminated against them based on their race and national origin, created a hostile work environment, and wrongfully

---

[1] This name is spelled "Rakip" in his affidavit (Dkt. 34), but "Rakid" elsewhere. (*See* Affidavit of Meritorious Defense in Support of the Motion Submitted by Rocky's ("Rocky's Affidavit") Dkt. 44.)  Because the caption in this case names "Rakid," the undersigned uses this spelling when referencing the first name of Defendant Vrlaku.

1

terminated them in retaliation for their complaints regarding Defendants' discriminatory conduct. (*See* Compl. ¶¶ 28, 33, 38, Dkt. 1.) After some problems with initial service of the Complaint, Plaintiffs served Defendants again on September 19 and 20, 2016. (Affidavits of Service, Dkts. 10-12.) The corporate Defendants were served via the New York Secretary of State (Dkts. 10, 11) and Rakid Vrlaku was served at his personal residence through his son. (Dkt. 12.) None of the Defendants responded or appeared, and the Clerk of the Court entered an order of default on October 24, 2016. (Dkt. 13.)

Plaintiffs moved for default judgment on May 5, 2017. (Dkt. 14.) In a Report and Recommendation dated August 3, 2018, the undersigned found liability against Ideal and Rocky's on all claims, and against Vrlaku under Section 1981 and NYCHRL, and recommended that the motion be granted. ("R&R" at 11, 13, 17, Dkt. 20.) On September 7, 2018, the Honorable Nicholas Garaufis adopted the Report and Recommendation. (Dkt. 22.) The same day, judgment against Defendants was entered in the amounts of $267,551.29 in back pay and $15,000 in compensatory damages to Plaintiff Francis, and $339,591.89 in back pay and $15,000 in compensatory damages to Plaintiff George, plus prejudgment and post-judgment interest; in addition, Plaintiffs were jointly awarded $16,133.43 in attorneys' fees and costs (the "Default Judgment"). (Dkt. 23.)

On October 9, 2018, Defendants filed a notice of appeal of the Default Judgment, appearing in this case for the first time. (Dkt. 24.) Defendants did not pursue the appeal, however, and the appeal was dismissed on November 9, 2018 for failure to proceed. (Dkt. 25.)

On September 6, 2019, Defendants filed the Motion, seeking to vacate the Default Judgment. (Dkt. 27.) Oral argument was held on January 23, 2020. (*See* Minute Entry dated Jan. 23, 2020).[2] At the court's direction, counsel submitted supplemental filings showing Plaintiffs' counsel's

---

[2] At oral argument, the parties expressed a willingness to engage in a settlement conference. A settlement conference was held with the undersigned on March 26, 2020, but the parties were unable to reach an agreement. (*See* Minute Entry dated Mar. 26, 2020.)

2

fees and costs incurred after filing of the Motion for Default Judgment (Attorney Billing Records of Allen Bodner, Esq. ("Bodner Billing Records"), Dkt. 42; Attorney Billing Records of Serrins & Associates LLC ("Serrins Billing Records"), Dkt. 43), and affidavits from individuals with direct knowledge of specific facts to support a "meritorious defense" (Affidavit of Rakid Vrlaku as President of Rocky's Construction ("Rocky's Aff."), Dkt. 44; Affidavit of Pajazit Vrlaku as President of Ideal Masonry, Inc. and Rakid Vrlaku in his individual capacity ("Ideal Aff."), Dkt. 46.)

## DISCUSSION

### I. Legal Standard for Vacating a Default Judgment

In deciding a motion to vacate a default judgment under Federal Rule of Civil Procedure 60(b), the court "is to be guided principally by three factors: (1) whether the default was willful, (2) whether the defendant demonstrates the existence of a meritorious defense, and (3) whether, and to what extent, vacating the default will cause the nondefaulting party prejudice." *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998).

"It is well established that default judgments are disfavored. A clear preference exists for cases to be adjudicated on the merits." *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 174 (2d Cir. 2001). *See also, Am. All. Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996) ("Strong public policy favors resolving disputes on the merits.") "[B]ecause defaults are generally disfavored and are reserved for rare occasions, when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993).

### II. Analysis

#### A. *Willfulness*

"Willfulness," in the context of a default "refer[s] to conduct that is more than merely negligent or careless, but is instead egregious and not satisfactorily explained." *Bricklayers & Allied*

3

*Craftsworkers Local 2 v. Mouton Masonry & Const., LLC*, 779 F.3d 182, 186 (2d Cir. 2015) (quotations omitted). Administrative or clerical errors constitute the type of "excusable neglect" encompassed in Rule 60(b)(1), whereas a "strategic decision to default" does not. *Am. All. Ins.*, 92 F.3d at 60.

Defendants claim that Rakid Vrlaku was not properly served, and that Ideal and Rocky's "never did receive a copy of the summons and complaint." (Affirmation of William T. O'Halloran in Support of Motion ("O'Halloran Aff.") ¶¶ 11-12, Dkt. 27-1.) Defendant Ideal's president Pajazit Vrlaku asserted that Ideal "did not receive any pleadings from the subject litigation." (Affidavit of Pajazit Vrlaku, dated Oct. 28, 2019 ("Pajazit Vrlaku 2019 Aff.") ¶ 6, Dkt. 33.) He states that Ideal "did relocate its corporate operations from 80 Spartan Avenue Staten Island, New York to a New Jersey address and did file a change of address form with the United States Post Office for the new address." (Pajazit Vrlaku 2019 Aff. ¶ 5.) However, he does not provide any dates for this move or explain how relocation affected delivery of the pleadings to Ideal.

The record in this case shows that after being notified that Defendants had moved to New Jersey around 2015 or 2016, Plaintiffs effectuated service a second time on the corporate Defendants through the New York Secretary of State on September 19, 2016 and on Vrlaku at his new residence in New Jersey the next day. (R&R at 3.) This Court has already found that service on Vrlaku was proper, and he has not submitted any additional facts that would cast doubt on that finding. (*Id.* at 5-6.)

Ideal's claims that it did not receive *any* of the many filings in this case are not credible. Those filings included not only the Complaint, but also the motion for default judgment (Dkt. 14), minutes from the inquest (Minute Entry dated May 9, 2018), and the report and recommendation (Dkt. 20), all of which were mailed to Defendants. (*See* Affs. of Serv. of Compl., Dkts. 10, 11, 12; Aff. of Serv. of Motion for Default Judgment, Dkt 15; Minute Entry dated May 9, 2018 (directing Plaintiffs to mail a copy of the Minute Entry and supplemental calculations to Defendants); Ex. 1 to

4

Letter by Peter Francis, Michael George, Aff. of Serv. of R&R, Dkt. 21-1.)  Defendants clearly received the Default Judgment (Dkt. 23), because they filed a notice appealing that judgment shortly thereafter on October 9, 2018.  (Dkt. 24.)  Defendants do not explain how they received *this* mailing, and none of the others, despite there being no indication that the Default Judgment was sent to a different address.  Defendants also do not explain why, when they did receive the Default Judgment, they did not seek to vacate it immediately, but instead filed and then abandoned an appeal.  Not only is their explanation for their failure to appear pre-judgment feeble, but even more egregiously, they fail to explain why, after they undeniably learned of this case, they delayed almost an entire year before finally moving to vacate the Default Judgment.  Rule 60(c) requires that a motion under 60(b) be filed "no more than a year after the entry of the judgment or order […]." The fact that Defendants filed the Motion on September 6, 2019 (Dkt. 27), exactly 364 days after the Default Judgment was entered, underscores the willfulness of their failure to appear and leads inexorably to the conclusion that delay was a strategic choice.

      Defendants also claim, somewhat inconsistently, that they "did not understand that they had to further respond to plaintiffs' summons and complaint in this matter as they thought they had been fully exonerated" after receiving the decision from the U.S. Equal Employment Opportunity Commission ("EEOC") dated June 17, 2016, dismissing Plaintiffs' complaint. (O'Halloran Aff. ¶ 5-6.)  Defendants' mistaken belief that they faced no further liability is not sufficient to constitute "excusable neglect" under these circumstances.  *See Bricklayers*, 779 F.3d at 186 (finding deliberate default despite mistaken belief that participation in audit was sufficient to discharge the defendants' duties).  Furthermore, any such belief, even if credible, would not be in good faith.  The EEOC letters, while entitled "Dismissal and Notice of Rights," clearly do not exonerate Defendants.  Rather, they state, "The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.

5

This does not certify that the respondent is in compliance with the statutes."[3] (Ex. A to O'Halloran Aff., Dkt. 27-2; Ex. B to O'Halloran Aff., Dkt. 27-3). The letters further state that Plaintiffs "may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court." (*Id.*) *Compare, Global Gold Mining, LLC v. Ayvazian*, 983 F. Supp. 2d 378, 387, 383 (S.D.N.Y. 2013) (vacated for lack of personal jurisdiction, but further finding that defendant's failure to appear based on good faith belief that arbitral tribunal's decision released him from further litigation was "not conclusively willful" when suit was the fifth dispute brought before the court or arbitral tribunal and third lawsuit in the SDNY on same issue).

Because Defendants have provided no excuse for their dilatory behavior, the undersigned finds that Defendants' default was willful.

### B. *Meritorious Defense*

"A defendant seeking to vacate a default must present some evidence beyond conclusory denials to support his defense." *Enron Oil*, 10 F.3d at 98. "The test of such a defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." *Id.*. There is a "low threshold of adequacy" to satisfy this test. *Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981).

Rocky's contends that it never employed Plaintiffs, and thus the judgment against Rocky's "should be considered void as there is no evidence in the entire record demonstrating that the plaintiffs were either employed or controlled or supervised by defendant, ROCKY'S CONSTRUCTION INC." (Reply to Plaintiff's Affirmation in Opposition ("Defs.' Reply") ¶ 8, Dkt. 32.) Defendant Vrlaku, who is president of Rocky's, submitted an affidavit stating that Rocky's never employed, exercised control over, or had any interaction with Plaintiffs, was never present at the project site in question, and has "essentially been dormant and has not been involved in any job

---

[3] The letters are dated March 17, 2016, not June 17, 2016.

6

sites for 10 years." (Rakid Vrlaku Aff. ¶¶ 5-10.)  Defendant Vrlaku also submitted affidavits and a 2015 W-2 showing that he was employed by Ideal during the relevant time period, and that he did not employ Plaintiffs.  (*Id.* ¶¶ 1-2, 4; Ex. C to Defs.' Reply, Dkt. 32-3.)

Pajazit Vrlaku, the president of Ideal, stated in his affidavit that it was Ideal who employed Plaintiffs during the relevant time period.  (Pajazit Vrlaku Aff. ¶ 2.)  Defendants also submitted 2015 W-2's for both Plaintiffs, which identify "Ideal Masonry Inc." as the employer.  (Ex. B to Rakid Vrlaku Aff., Dkt. 34-2; Ex. C to Rakid Vrlaku Aff., Dkt. 34-3.)

If proven at trial, Defendants' contention that Rocky's did not employ Plaintiffs and was not present at the project site would be a complete defense.  *See Shiflett v. Scores Holding Co.*, 601 F. App'x 28, 30 (2d Cir. 2015) (Title VII liability against an entity that is not one's employer can only be imposed through the "single employer" doctrine or the "joint employer" doctrine).  While referring to the corporate Defendants as "the Company," or separate "Corporate Defendants" (s*ee* Compl. ¶¶ 10-12), Plaintiff has not claimed that Defendants constituted a "single employer" or "joint employer."

In addition to contending that Rocky's did not employ Plaintiffs, Defendants "vociferously deny the racist abuse alleged by the plaintiffs" and maintain that Plaintiffs were lawfully discharged. (O'Halloran Aff. ¶¶ 8-10.)  Because this defense was originally offered only through statements of counsel, the Court directed Defendants to submit affidavits from witnesses with personal knowledge of the facts, if any.  (Order dated Jul. 7, 2020.)  *See M. Cooper Motor Leasing, Ltd. v. Data Disc. Ctr., Inc.*, 125 A.D.2d 454, 454 (N.Y. App. Div. 1986) (affirmation of defendant's attorney with no personal knowledge of the facts "has no substantive probative value as to a showing of a meritorious defense, and the motion to vacate the defendants' default was therefore properly denied.").

Defendants thereafter submitted an affidavit in which Pajazit Vrlaku and Defendant Vrlaku deny that Defendants engaged in preferential treatment for white employees, used racial slurs, or

7

engaged in harassment; they also describe a non-discriminatory basis for Plaintiffs' termination.[4] (Ideal Aff. ¶¶ 6, 10, 15.)

Defendants submitted a list of employees at the project site, dated January 17, 2016, ("Employee List") in support of their contention that they had a diverse workforce. (Ex. B to Ideal Aff., Dkt. 46-2.) Of the 34 non-supervisory employees working as brick layers and mason tenders, 25 identified themselves as Black (non-Hispanic), one as Hispanic, and three as Asian. (*Id.*; Ideal Aff. ¶¶ 18-19.) Five employees identified as White (non-Hispanic), and Defendants describe them as "all relations of the Vrlaku family." (Ideal Aff. ¶ 19.) All employees are described on the list as hired after January 1, 2014 and terminated due to "deficiency of work," with no dates indicated. (Ex. B to Ideal Aff.) Defendants use the Employee List to impeach Plaintiff George's testimony in which he agreed with the statements that "'the majority of the other workers who [he] worked with… was predominantly Albanian and white employees[.]'" (Ideal Aff. ¶ 17.) Merely maintaining a diverse workforce does not constitute a defense to Plaintiffs' allegations of discrimination, harassment and retaliation.

However, Defendants also state a non-discriminatory basis for terminating Plaintiffs, which would present a meritorious defense. *See Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008) (quotation omitted) (once plaintiff makes prima facie case of discrimination, "the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its action. If such a reason is provided, plaintiff may no longer rely on the presumption raised by the prima facie case …."). Defendants state that Plaintiffs were informed at the time of their hiring that it would only be for a few months, that Plaintiffs understood their employment was conditional on the availability of work at that project site, which would fluctuate, and that Plaintiffs agreed to these circumstances. (Ideal

---

[4] The affidavit is signed jointly by Pajazit Vrlaku and Rakid Vrlaku. Unless a statement is specifically attributed to a particular affiant, the undersigned infers that both individuals swear to each statement.

8

Aff. ¶¶ 4, 8.)  Defendant Vrlaku further asserts that he informed Plaintiffs when he terminated them on April 22, 2015 that Ideal's policy was that the last hired would be the first let go if work on the site slowed.  (*Id.* ¶¶ 6, 10.)  According to Defendants, all employees at the site were terminated in July 2015 due to "deficiency of work."[5]  (*Id.* ¶ 20.)

Defendants' assertion that Plaintiffs were terminated pursuant to Ideal's seniority policy and the availability of work – rather than on any discriminatory basis – together with Defendants' denials of "the use of racial slurs and accompanying harassment" – would, if proven at trial, constitute a complete defense.

### C. *Prejudice to Plaintiff*

In order to show the requisite level of prejudice in opposition to a motion to vacate a default, a plaintiff "must demonstrate that any prejudice resulting from the defendant's default cannot be rectified in the Court in another manner were the default to be vacated." *Murray Eng'g, P.C. v. Windermere Properties LLC,* 12-CV-52 (JPO), 2013 WL 1809637, at *5 (S.D.N.Y. Apr. 30, 2013).  "Delay alone is not a sufficient basis for establishing prejudice." *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983).  Rather, "it must be shown that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Id.*

Plaintiffs have not demonstrated the degree of prejudice necessary to deny a motion to vacate.  Plaintiffs cite delay in recovering the judgment as the primary prejudice they would suffer.  (Plaintiffs' Memo of Law in Opp. at 8, Dkt. 30.)  However, such delay is inherent in any default judgment that is then vacated.  They also argue that delay "may" result in the loss of evidence and other harm, but they provide no specific explanations for how vacating the default would prove

---

[5] The undersigned reads this to mean that all *remaining* employees were terminated in July 2015, because Defendants concede that Plaintiffs and two other brick layers were terminated on April 22, 2015.  (*Id.* ¶¶ 6, 10.)

9

prejudicial in that way. (*Id.*) They have not pointed to any evidence that would be lost, or memories that would be dimmed through the passage of time.

One way in which Plaintiffs have experienced prejudice is by incurring attorneys' fees and other costs that would not have been necessary absent Defendants' default. Plaintiffs have devoted considerable time and resources to prosecuting this case upon Defendant's default, including filing a motion for default judgment, participating in an inquest at which both Plaintiffs testified, filing supplemental calculations and documents, responding to the Motion, and appearing for oral argument. (Dkts. 17, 18, 19, 30, 31; Minute Entry of Jan. 23, 2020.) Attorney billing records submitted at the Court's direction show that Plaintiffs also engaged in extensive efforts to enforce the Default Judgment. (*See* Bodner Billing Records; Serrins Billing Records.)

Prejudice in the form of needlessly expended resources is insufficient to deny vacating the default. After all, this kind of prejudice can be cured through other means, namely, the imposition of a condition that Defendants bear the costs and fees incurred by Plaintiffs as a result of the default. *See Murray*, 2013 WL 1809637, at *5 (addressing plaintiff's argument that it "'will suffer prejudice if the default judgment is vacated because it has already spent significant resources on discovery and pre-trial work,'" court found that expenses incurred by plaintiff in retaining appraiser and expert on damages, "though by no means trivial, can be cured by the imposition of a condition that [defendant] bear the costs" of the work done, along with attorneys' fees.)

Therefore, while the degree of prejudice here does not rise to the level necessary to deny the Motion, requiring payment of costs and attorneys' fees to rectify the prejudice to Plaintiffs caused by Defendants' default is appropriate as a condition of vacating the Default Judgment. "In determining whether to exercise its discretion to set aside a default, … a district court has inherent power to impose a reasonable condition on the vacatur in order to avoid undue prejudice to the opposing party." *Powerserve Int'l, Inc. v. Lavi*, 239 F.3d 508, 515 (2d Cir. 2001) (citation omitted). "The

10

imposition of conditions as part of granting a Rule 55(c) motion can be used to rectify any prejudice suffered by the non-defaulting party as a result of the default and the subsequent reopening of the litigation." *Id.* (quotations omitted.)  Rule 60(b) permits relieving a party from a default "upon such terms as are just."  "In fact, Courts consistently read this provision as permitting the award of attorney's fees incurred in bringing the default motion as a condition to vacating a default judgment." *Richardson v. Nassau Cnty.*, 184 F.R.D. 497, 503 (E.D.N.Y. 1999) (citing *Video Power Int'l, Inc. v. Sardella,* No. 89-CV-3201, 1990 WL 47777, at *5 (E.D.N.Y. Apr. 3, 1990); *Walpex Trading Co. v. Yacimientos Petroliferos Fiscales Bolivianos,* 109 F.R.D. 692, 698 (S.D.N.Y. 1986); *Roundball Enters., Inc. v. Richardson,* 99 F.R.D. 174, 177 (S.D.N.Y. 1983)).  *See also, Aguilar v. E-Z Supply Corp.,* No. 06-CV-6790 (SLT)(RER), 2009 WL 922053, at *2 (E.D.N.Y. Mar. 31, 2009) (fees and costs are appropriate because willfully deceptive conduct of defendant gave rise to litigation relating to default judgment).

"Courts in this Circuit have liberally granted plaintiffs' requests for attorney's fees and costs when vacating default judgments." *Henderson v. Wishinski*, No. 95 Civ 5059 (KMW), 1997 WL 83413, at *3 (S.D.N.Y. Feb. 27, 1997).  *Filo Promotions, Inc. v. Bathtub Gins, Inc.,* 311 F. Supp. 3d 645, 647 (S.D.N.Y. 2018) ("One such condition that is routinely imposed is the requirement that the defaulting party reimburse the plaintiff its reasonable attorneys' fees and costs incurred as a result of the default.")  Imposing such conditions may be appropriate even absent willfulness. *See, e.g., Id.* at 649; *Corso v. First Frontier Holdings, Inc.*, 205 F.R.D. 420, 421 (S.D.N.Y. 2001) ("While [defendants] did not willfully default, their defaults were, nevertheless, due to their inattentiveness to the present action.")

Having considered the relevant factors, the undersigned finds that Defendants acted willfully, but that they have presented a meritorious defense and there is insufficient prejudice to Plaintiffs.  Accordingly, the undersigned respectfully recommends that the Motion be granted, but that the Default Judgment be vacated only on the condition that Defendants first pay Plaintiffs the

11

fees and costs that Plaintiffs incurred as a result of the default. It is further recommended that Plaintiffs be permitted to file an application for attorneys' fees and costs incurred as a result of Defendants' default. In doing so, Plaintiffs must be mindful of the reduced hourly rates that were awarded as part of the Default Judgment. (*See* R&R at 25-26.) The hours billed and costs expended may not include hours and costs that would have been expended even if Defendants had not defaulted. The attorneys' fees must be supported with contemporaneous billing records and a description of each attorney's qualifications. All costs must be supported with appropriate invoices or other documentation.

## CONCLUSION

The undersigned respectfully recommends that the Motion be granted, and that the Default Judgment be vacated, but that vacatur be contingent upon the requirement that Defendants first pay to Plaintiffs the costs and attorneys' fees Plaintiffs incurred as a result of the default. It is also respectfully recommended that Plaintiffs be granted leave to submit an application for such costs and attorneys' fees, supported by appropriate documentation.

Any objection to this Report must be filed in writing with the Clerk of Court within fourteen (14) days of service. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to timely file any such objection waives the right to appeal the District Court's Order. *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008).

**SO ORDERED:**

*Peggy Kuo*
PEGGY KUO
United States Magistrate Judge

Dated:   Brooklyn, New York
         September 25, 2020